UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No.  07 CR 456-2 |
| ) | Honorable Judge Der-Yeghiayan |
| CHRISTIAN CARRILLO DEL TORO ) | |
| Defendant. ) | |

**DEFENDANT'S POSITION PAPER ON SENTENCING FACTORS**

Now comes Christian Carrillo Del Toro, through his attorney Irving Miller, and respectfully submits the following Position Paper on Sentencing Factors.

**I.   INTRODUCTION**

On May 28, 2008 the defendant appeared before this Honorable Court and entered a plea of guilty to Count One of the Indictment alleging Conspiracy to Possess with Intent to Distribute a Controlled Substance.   The charge carries a mandatory minimum sentence of ten years imprisonment.   Guidelines as determined by the probation department place the defendant at level 35 setting a range of imprisonment of 168 to 210 months.

**II.   DEFENDANT'S OBJECTION TO THE DENIAL OF A 2 LEVEL REDUCTION PURSUANT TO GUIDELINE 3B1.2(b).**

Defendant respectfully requests that this Honorable Court find that he should be granted a two level reduction in that he was a minor participant in the conspiracy which forms the basis of this prosecution.

Under Section 3B1.2(b) a defendant who was a "minor participant" in any criminal activity is entitled to a 2 level Guideline reduction. <u>United States v. Emerson,</u> 501 F3d 804, 815 (7th Cir. 2007)

Commentary concerning the applicability of the adjustment defines "minor participant" as a defendant who plays a part in committing the offense that makes him substantially less culpable

than the average participant and who is less culpable than most other participants but whose role could not be described as minimal. U.S.S.G., Section 3B1.2 comment. N.3(A)5..

The determination whether to apply this reduction requires an inquiry heavily dependant on the facts of each particular case. U.S.S.G., Section 3B1.2 comment. N.3(C).

It is the Defendant's position that the operative facts of this case leads to the conclusion that he should be given consideration for such a reduction. The plea agreement, the presentence investigation and the Governments Version of the Offense accurately reflect the facts in this case.

There are three parties described by the government as being participants in this conspiracy.

First, the leader, Individual A. The first line of the Governments Version of the Offense states that "Defendant **worked for Individual A** in connection with a drug conspiracy". (Emphasis added). It further states that the Individual A was the one who rented out both the apartment in which the defendant was arrested wherein money was counted, where money was stashed and where the weapon was discovered. It also states that Individual A was the one who "kept money counters at the apartment and also periodically brought large sums of money to the apartment." Further, it was Individual A who according to said version "rented a house in Chicago to store illegal narcotics ("the stash house") where the drugs were actually located. With respect to the charged delivery of cocaine on July 18, 2007, it was "...Individual A had arranged for Rosario to pick up a shipment of drugs to store at the stash house. Specifically, Individual A had arranged for Rosario to pick up 45 kilograms of cocaine" (Gov. Ver. p.3) It further states that it was Individual A who told the defendant to give $1200 to Rosario to give to the person who had delivered the cocaine to Rosario. It was Individual A who was to provide "reimbursement" for the costs of the duffel bags utilized in said shipment. Individual A has escaped prosecution in this matter.

The other participant other than the defendant was Angel Rosario, co-defendant in this case. As the presentence report narrates, Rosario did the following:

1. He was the individual who was in contact with the CI in order to arrange for the delivery of 45 kilos of cocaine which was brought to Chicago from Texas.
2. He met with the CI in Chicago after those calls and in recorded conversations with the CI discussed the transactions.
3. He traveled with the CI to a Target store wherein he purchased the duffle bags which were to be used to transport the cocaine.
4. He had a subsequent meeting with the CI wherein he agreed that he would drive the CI's vehicle containing the cocaine to a garage to unload the cocaine while the CI remained at the meeting location.
5. He unloaded the cocaine at 7250 S. Avers where agents subsequently found the "sham" cocaine as well as a weapon.
6. He also admits being in possession of 4.9 kilos of cocaine previously at 7250 S. Avers.

Defendant, on the other hand, was never present during the delivery of the 45 kilos. He never had any contact at any time with the CI. He never set up locations, purchased bags, drove any vehicles to transport narcotics or unloaded the 45 kilos. He was truly a minor player, both in legal and practical terms. His role, to assist Rosario in hiding the 4.9 kilos on Avers prior to July 18, 2007, counting money from narcotics transactions done by Individual A, keeping records for Individual A and giving Rosario $1200.00 at Individual A's direction to pay the drug courier on July 18, 2007. Defendant reward - Individual A provided him with housing, clothing, food, a cellular telephone and between $500 to $1000.00 per month.

Defendant asks this Honorable Court to find that he was a minor participant in this matter.

### III. STATUTORY FACTORS SET FORTH IN 18 U.S.C.3553(a).

In imposing a sentence, the District Courts shall consider the sentencing factors as set forth in 18 U.S.C. 3553(a) wherein "the court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider- "

> (1) the nature and circumstance of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed ----
> (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

     (C) to protect the public from further crimes of the defendant; and
     (D) to provide the defendant with needed educational or vocational training,
     medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   (4) the kinds of sentences and the sentencing range (under Sentencing Guidelines)
   (5) any pertinent policy statements...issued by the Sentencing Commission;
   (6) the need to avoid unwarranted sentence disparities among defendants with
   similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense.

  Christian Carrillo Del Torro is a 26 year old male who came to this country, albeit illegally, to better himself, look for work and to provide is six year old daughter.  He has no prior criminal record in Mexico or in the United States.

  Unable to find a viable job, he accepted the offer of food, clothes, housing and money from Individual A.  In the process, he violated the laws of this country.  He has acknowledged his illegal activity and is ready to accept the punishment that goes along with it.  The question is what is the appropriate punishment.

  The defendant faces a statutory minimum punishment of ten years in the Bureau of Prisons. For a 26 year old with no background and considering his role in the offense that is a significant sentence which reflects the Section 3553 factors totally.  It would demonstrate that this is was serious offense which in turn provides a significant sentence.  It would be a just sentence and the public would clearly be protected in taking into account both the crime and the individual who is being sentenced for the crime.   The defendant while clearly being culpable for the commission of these offenses, there are degrees of culpability.  His role, whether the Court accepts his arguments for minor participation or not, was clearly a less significant role than others as set forth in our arguments above.

  A significant factor herein is the effect of the weapon in this case.  Factually, a weapon was found underneath the pillow of defendant's bedroom.  He acknowledged that he believed that Individual A had brought the weapon into the apartment.  He further acknowledges that he knew of the weapon and in fact had moved it around the apartment.  As a result of being in possession

of a weapon the defendant receives a two level enhancement under the Guidelines, does not qualify for the "safety valve" to allow a sentence below the mandatory minimum and does not receive a two level reduction in Guideline sentences for qualifying for the "safety valve".   My point, the defendant is going to pay a significant penalty for that weapon, a fourteen year minimum guideline sentence instead of being a level 31 offender wherein a nine year sentence would come into play under the Guidelines, a five year difference for the possession of that weapon.   This argument is not to minimize the weapon at all, but just made to point out the significance of this factor already factored into the Guidelines.

### IV.   SENTENCING DISCRETION - *GALL V. UNITED STATES*

On December 10, 2007 the Supreme Court decided *Gall v. United States, 128 S.Ct. 591 (2007)*.   The Court held that the "starting point and initial benchmark" of the sentencing process is to calculate the applicable advisory Guideline range.  *Gall, 128 S.Ct. at 596.*   The Court then held that the Guidelines are "not the only consideration" - a district judge should then "consider all of the factors (in 18 U.S.C. 3553(a)) to determine whether they support a sentence outside the Guideline range.  *Id at 596.*   In addition, the judge "may not presume that the Guidelines range is reasonable" but "must make an individualize assessment based on facts presented."  *Id at 596-7.*  The Court went on to hold that "extraordinary circumstances" are not required in order to impose a sentence that deviates from the advisory guidelines.   The opinion states that:

> "we reject, however, an appellate rule that requires "extraordinary Circumstances to justify a sentence outside the Guideline range.  We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id. at 595.*

Christian Carrillo Del Torro asks that this Court use its discretion and apply all factors under 18 U.S.C. 3553(a) in imposing an appropriate sentence.   We ask this Court to impose a sentence of 10 years imprisonment.


/s Irving Miller
Attorney for Christian Carrillo Del Torro


Irving Miller
 10 S. Riverside Plaza
Chicago, Illinois 60606
312 207-1700

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| Plaintiff, ) | |
| vs. ) | No.  07 CR 456-2 |
| ) | Honorable Judge Der-Yeghiayan |
| **CHRISTIAN CARRILLO DEL TORRO** ) | |
| Defendant. ) | |

### CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P.5. , LR 5.5 and the General Order on Electronic Case Filing (ECF), Defendant Position Paper on Sentencing Factors filed pursuant to the District Court's ECF system as to ECF filers on July 28, 2008.

                                                Respectfully submitted


                                                /s Irving Miller
                                                Attorney for Christian Carrillo Del Torro


Irving Miller
10 S. Riverside Plaza - #1020
Chicago, Illinois  60606-3910
(312) 207-1700