UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 456 |
| vs. | ) | Judge Der-Yeghiayan |
| | ) | |
| CHRISTIAN CARRILLO DEL TORO | ) | |

**GOVERNMENT'S RESPONSE TO
DEFENDANTS' POSITION PAPER ON SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds to defendant Christian Carrillo Del Toro's Position Paper on Sentencing Factors, as follows:

I. **Defendant Does Not Qualify for a Two-level Reduction as a "Minor Participant."**

Defendant has requested that this Court to grant him a two-level reduction in his offense level for his sentencing calculation under U.S.S.G. §3B1.2(b), which provides that "if the defendant was a minor participant in any criminal activity, decrease [the offense level] by 2 levels." Application Note 5 describes a "minor participant" as a defendant who is less culpable than most other participants, but whose role could not be described as minimal. The government objects to this reduction on the grounds that Carrillo does not qualify for a reduction as a minor participant.

Defendant, as the proponent of the minor role reduction, bears the burden of proving that he was a minor participant under Guidelines Section 3B1.2(b). *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004). In order to carry his burden, defendant must demonstrate that he is "substantially less culpable than the average participants in the conspiracy." *United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005).

Defendant premises his request upon a comparison of his role in the conspiracy to that of his boss, Individual A, an unindicted co-conspirator. Comparison to his boss does not make defendant a minor participant in the conspiracy. In addition to the fact that Individual A was the boss, rather than the average participant in the conspiracy, the comparative roles of the participants in the conspiracy are not the sole factor in considering whether to grant a minor role reduction. *United States v. Kerr*, 13 F.3d 203, 206 (7th Cir. 1993). Even though one person might be the "driving force" behind the criminal scheme, a defendant who plays an integral role by assisting with that scheme is not eligible for a minor role reduction. *See United States v. Navarro*, 90 F.3d 1245, 1263 (7th Cir. 1996).

An examination of Carrillo's role shows that he was not a minor participant in the conspiracy. In examining Carrillo's role, it is important to clarify a factual inaccuracy: Carrillo claims in his sentencing memorandum that he assisted his co-defendant, Angel Rosario ("Rosario"), in hiding the 4.9 kilos of heroin at the stash house on Avers prior to July 18, 2007. In fact, it was Carrillo, not Rosario, who hid that heroin at the stash house. Carrillo admitted in his plea agreement that he frequented the stash house with and without Rosario, with Individual A and with other unknown individuals. Carrillo further admitted that he hid the 4.9 kilos of heroin in a recessed cabinet at the stash house. Carrillo admitted that after he hid the 4.9 kilos of heroin in a recessed cabinet at the stash house, he showed it to Rosario when giving Rosario instructions on where to hide drugs when Rosario joined the conspiracy. Specifically, Carrillo admitted that:

> [O]n one occasion prior to July 18, 2007, he was in possession of approximately 4.9 kilograms of heroin, wrapped in six plastic packages, which he took to the stash house for purposes of storing the heroin there. Defendant stored the packages of heroin in a recessed cabinet under a counter in the kitchen of the stash house. Defendant further admits that on one occasion prior to July 18, 2007, after he had stored the 4.9 kilograms of heroin in the recessed cabinet, defendant and Rosario

>were both at the stash house, and defendant showed Rosario how to access the recessed cabinet with a wire hanger. Defendant also instructed Rosario that when Rosario obtained drugs on behalf of the conspiracy, Rosario should store the drugs in the recessed cabinet where defendant previously had placed the 4.9 kilograms of heroin.

Plea Agreement of Christian Carrillo del Toro, ¶6. Indeed, Carrillo's admissions were corroborated by identification of his multiple fingerprints on the heroin packages, whereas no fingerprints of Rosario were found there.

Carrillo had a significant role in the overall conspiracy, in addition to handling drugs on behalf of the conspiracy in the prior drug transaction, involving the 4.9 kilos of heroin. He kept books and records related to the conspiracy, collecting receipts from Rosario for purposes of obtaining reimbursement from Individual A. Carrillo handled money on behalf of the conspiracy, counting large sums of drug proceeds, alongside Individual A – indeed, more than $350,000 was recovered from the apartment where Carrillo and Rosario were arrested. *See United States v. Davis*, 27 Fed.Appx 668, 2001 WL 1613842 (7th Cir. 2001)(defendant was not entitled to minor participant reduction where, among other things, she had significant knowledge about the drug operation, and personally handled drugs and money on at least one occasion). Carrillo also had possession of the gun used to protect the drug proceeds kept at the apartment.

Carrillo also was a participant in the drug transaction involving the 45 kilos of cocaine, even though he did not deal with the confidential informant or handle the cocaine. Carrillo admitted that he knew that Rosario had been sent to pick up the 45 kilos of cocaine on July 18, 2007. Carrillo previously had instructed Rosario where to stash drugs. Carrillo kept track of the expenses for the cocaine transaction, taking the receipt from Rosario for the duffel bags used to transport the cocaine. Carrillo took instructions from Individual A on providing Rosario with money to pay the drug

courier, and Carrillo gave Rosario money to pay the drug courier (who was actually the confidential informant). *See United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003) (although the defendant had argued that he was not a party to the drug transaction and served merely as a messenger, the court agreed that this did not justify a minor role reduction where the defendant was fully aware of the drug operations, was aware of the purpose of the other participants and made it possible through his own actions); *United States v. Crowley*, 285 F.3d 553 (7th Cir. 2002)(wife was not a minor participant in drug conspiracy where she took a number of steps to assist her husband in the distribution of methamphetamine, handling details and acting as "his business partner"). Carrillo's reliance on the fact that he did not deal directly with the confidential informant in this drug transaction is misplaced, because a defendant does not meet his burden of showing that he is a minor participant simply by claiming that he did not handle drugs in a specific transaction. *See United States v. Cain*, 155 F.3d 840, 844 (7th Cir. 1998).

For the above reasons, Carrillo has failed to prove that he was a minor participant in the conspiracy. Thus, he is not entitled to the two-point reduction under Guidelines Section 3B1.2(b).

**II.    Defendant Should Be Sentenced Within the Guidelines**.

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[1] In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in § 3553(a)(1)-(7).

---

[1]Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  § 3553(a)(2)(A)-(D).

One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 596 (2007). For two reasons, this court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of

individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007),[2] and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court and Seventh Circuit cases.

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S. Ct. at 594. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

---

[2]Although the Seventh Circuit has held that Guidelines 'departures' are no longer relevant after *Booker*, it is true that the Supreme Court referred multiple times to 'departures' from the Guidelines, as a category distinct from § 3553(a) variances, in *Rita*, 127 S. Ct. at 2461, 2465, 2468 (2007). However, even after *Rita*, the Seventh Circuit has continued to express the view that departures are obsolete. *United States v. Dale*, 498 F.3d 604, 611 n.6 (7th Cir. 2007).

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Id.* at 597.  In *Gall*, the Supreme Court affirmed a sentence of probation in an Ecstasy conspiracy case where the low-end of the range was 30 months of imprisonment.  Although the Court acknowledged the qualitative difference between probation and a sentence of imprisonment, the defendant presented extensive mitigating facts: his only role in the crime was to deliver drugs to other co-conspirators; he had voluntarily stopped distributing drugs "after deciding, on his own initiative, to change his life," which distinguished him from the "vast majority of defendants convicted of conspiracy"; after withdrawing from the drug conspiracy, he graduated from college and obtained steady employment; when confronted by law enforcement agents, he fully confessed to the crime; when indicted, he moved back to the district in which he was charged and started his own successful business; and he proffered a "small flood" of letters praising his character and work ethic.  *Id.* at 591-93, 599-600.

In contrast to the significant and uniquely-personal mitigating facts in *Gall*, the Seventh Circuit warns that major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense.  *Wachowiak*, 496 F.3d at 754.  Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable.  *Id.* at 750.  To be sure, these are only guides and not bright-line rules for assessing reasonableness, but they are helpful in preventing excessive sentencing disparities.

Here, Carrillo presents no factors compelling a deviation from the Guidelines.  Carrillo argues, essentially, that the Guidelines are too harsh, particularly because of his possession of a

7

firearm. However, as explained above, the Guidelines are formulated by a Commission regarded as knowledgeable in the area of penology, which has determined that the use of a firearm is a factor which should be taken into account in determining a defendant's sentence. A sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence, and the fact that defendant had possession of a firearm in connection with the drug conspiracy should not be disregarded in sentencing.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court deny defendant's request for a two-level reduction under U.S.S.G. §3B1.2(b) as a minor participant, and further sentence the defendant in accordance with the applicable Sentencing Guidelines.

Respectfully submitted,

By: *s/ Sheri H. Mecklenburg*
**SHERI H. MECKLENBURG**
Assistant U.S. Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 469-6030

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the **GOVERNMENT'S RESPONSE TO DEFENDANTS' POSITION PAPER ON SENTENCING FACTORS**, was served on July30, 2008, in accordance with Fed. R. Crim. P. 49 and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

   *s/ Sheri H. Mecklenburg*
Sheri H. Mecklenburg
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois  60604
(312) 469-6030